No. 18-178 C
(Judge Campbell-Smith)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BGT HOLDINGS LLC,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

DEFENDANT'S MOTION FOR PARTIAL DISMISSAL

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

ELIZABETH M. HOSFORD
Assistant Director

BORISLAV KUSHNIR
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone:  (202) 307-5928
Facsimile:  (202) 307-0972
Steven.Kushnir@usdoj.gov

April 3, 2018                                                    Attorneys for Defendant

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

QUESTIONS PRESENTED ..................................................................................................2

STATEMENT OF THE CASE................................................................................................2

    I.       Factual Background ........................................................................................2

    II.      Procedural Background ..................................................................................4

ARGUMENT............................................................................................................................4

    I.       Standard Of Review........................................................................................4

    II.      Ms. Onesti Did Not Have Authority To Decrease The Amount Of
           Contractually-Available GFE ........................................................................5

    III.     BGT Has Failed To Timely Assert Its Right To An Equitable
           Adjustment, To The Government's Detriment ...........................................7

    IV.     The Contract Precludes The Government's Liability For Breach Of
           Contract..........................................................................................................9

    V.      Plaintiff Cannot Avoid The Contact's Express Terms By Invoking The
           Implied Duty Of Good Faith And Fair Dealing.......................................10

CONCOUSION ....................................................................................................................11

# **TABLE OF AUTHORITIES**

**Cases**

*Agility Pub. Warehousing Co. KSCP v. Mattis*,
    852 F.3d 1370 (Fed. Cir. 2017) .............................................................................................. 10

*Axion Corp. v. United States*,
    75 Fed. Cl. 99 (2007) ............................................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................. 4

*Blue Lake Forest Products, Inc. v. United States*,
    86 Fed. Cl. 366 (2009) ........................................................................................................ 9, 10

*C.J. Betters Corp. v. United States*,
    25 Cl. Ct. 674 (1992) ............................................................................................................... 9

*Century Exploration New Orleans LLC v. United States*,
    745 F.3d 1168 (Fed. Cir. 2014) .............................................................................................. 10

*Dept. of Nat. Resources and Conserv. of State of Montana v. United States*,
    1 Cl. Ct. 727 (1983) ............................................................................................................... 10

*Federal Crop Ins. Corp. v. Merrill*,
    332 U.S. 380 (1947) ................................................................................................................. 5

*George A. Fuller Co. v. United States*,
    69 F. Supp. 409 (Ct. Cl. 1947) ............................................................................................... 10

*Info. Sys. & Networks, Corp. v. United States*,
    81 Fed. Cl. 740 (2008), *aff'd*, 356 Fed. App'x 410 (Fed. Cir. 2009) ........................................ 6

*K-Tech Telecomm., Inc. v. Time Warner Cable, Inc.*,
    714 F.3d 1277 (Fed. Cir. 2013) ................................................................................................ 4

*Kam-Almaz v. United States*,
    682 F.3d 1364 (Fed. Cir. 2012) ................................................................................................ 4

*Liberty Ammunition, Inc. v. United States*,
    835 F.3d 1388 (Fed. Cir. 2016), *cert. denied*, 137 S.Ct. 1825 (2017) ...................................... 5

*Metcalf Const. Co., Inc. v. United States*,
    742 F.3d 984 (Fed. Cir. 2014) ................................................................................................ 10

*Ozark Dam Constructors v. United States*,
  127 F. Supp. 187 (Ct. Cl. 1955) ................................................................................... 9

*Trauma Serv. Grp. v. United States*,
  104 F.3d 1321 (Fed. Cir. 1997) ..................................................................................... 5

*Wells Brothers Co. v. United States*,
  254 U.S. 83 (1920) ......................................................................................................... 9

*Winter v. Cath-dr/Balti J.V.*,
  497 F.3d 1339 (Fed. Cir. 2007) ..................................................................................... 5

*Wood v. United States*,
  258 U.S. 120 (1922) ....................................................................................................... 9

**<u>Rules</u>**

RCFC 12(b)(6) ....................................................................................................................... 4

**<u>Regulations</u>**

48 C.F.R. § 52.243-1 ..................................................................................................... 3, 7, 8

48 C.F.R. § 52.245-1 ..................................................................................................... *passim*

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|                                |   |                          |
|--------------------------------|---|--------------------------|
| BGT HOLDINGS LLC,              | ) |                          |
|                                | ) |                          |
| Plaintiff,                     | ) |                          |
|                                | ) | Case No. 18-178 C        |
| v.                             | ) |                          |
|                                | ) | (Judge Campbell-Smith)   |
| THE UNITED STATES,             | ) |                          |
|                                | ) |                          |
| Defendant.                     | ) |                          |
|                                | ) |                          |

## **DEFENDANT'S MOTION FOR PARTIAL DISMISSAL**

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss counts I, II, and III of plaintiff BGT Holdings LLC's (BGT) complaint. The Government procured BGT's services to construct and deliver a gas turbine generator set. As part of the agreement, the Government agreed to provide certain Government-furnished equipment (GFE) for use in assembling the generators. BGT alleges that the Government violated the agreement by withdrawing several items from the list of available GFE. But the alleged withdrawal cannot be binding on the Government, and no damages can arise from it, because it was admittedly ordered by an unauthorized Government agent. Regardless, the agreement between the Government and BGT establishes a strict deadline for asserting claims related to the withdrawal of GFE, and BGT has admittedly failed to comply with that deadline. The agreement also excludes the Government's liability for breach of contract claims. Accordingly, the Court should dismiss counts I, II, and III of BGT's complaint.

**QUESTIONS PRESENTED**

1.      Whether the Government is liable for the alleged withdrawal of GFE by unauthorized Government personnel.

2.      Whether BGT's request for equitable adjustment, asserted long after a contract-imposed deadline, was timely.

3.      Whether BGT can pursue claims for breach of contract and breach of the duty of good faith and fair dealing despite contract provisions that preclude the Government's liability for these claims.

**STATEMENT OF THE CASE**

**I.      Factual Background**

On October 27, 2014, the Naval Surface Warfare Center, Philadelphia Division (NSWCPD) awarded contract no. N65540-15-C-0001 (the Contract) to BGT.  Compl. at ¶ 7, ECF No. 1; Contract at 1, ECF No. 1-1.  Pursuant to the Contract, BGT agreed to construct and deliver "a complete air cooled Gas Turbine Generator Set (GTGS)" to NSWCPD.  Compl. at ¶ 7, ECF No. 1; Contract at 10, ECF No. 1-1.  The Contract was awarded to BGT on a firm fixed price (FFP) basis.  Compl. at ¶ 9, ECF No. 1; Contract at 8, ECF No. 1-1.  The original delivery date for the GTGS was September 30, 2015.  Contract at 36, ECF No. 1-1.

The Contract identifies a number of GFE "for use in assembling the GTGS," including "engine mounts" and an "exhaust diffuser & collector."  Compl. at ¶ 14, ECF No. 1; Contract at 22, ECF No. 1-1.  The Contract then incorporates by reference a list of regulations governing the parties' conduct, including section 52.245-1 of the Federal Acquisition Regulation (FAR), which addresses contractors' use of GFE.  *See* Contract at 43-45, ECF No. 1-1.  That FAR section provides, in relevant part, that "[t]he Contracting Officer may by written notice, at any time . . .

decrease the amount of Government-furnished property under this contract" or "[w]ithdraw authority to use property." 48 C.F.R. § 52.245-1(d)(3). FAR 52.245-1 also provides that "[e]quitable adjustments under this clause shall be made in accordance with the procedures of the Changes clause [in FAR 52.243-1]." *Id.* at § 52.245-1(i). The changes clause, in turn, states that a contractor seeking an equitable adjustment "must assert its right . . . within 30 days" of the contracting officer's written order. 48 C.F.R. § 52.243-1(c).

More generally, the Contract provides that "[t]he Contracting Officer is the only person authorized to approve changes in any of the requirements of this contract and notwithstanding provisions contained elsewhere in this contract, the said authority remains solely the Contracting Officer's." Contract at 54, ECF No. 1-1. It instructs that BGT "shall not comply with any order, direction or request of Government personnel unless it is issued in writing and signed by the Contracting Officer, or is pursuant to specific authority otherwise included as a part of this contract." *Id.* Thus, "[i]n the event [BGT] effects any change at the direction of any person other than the Contracting Officer, the change will be considered to have been made without authority and no adjustment will be made in the contract price to cover any increase in charges incurred as a result thereof." *Id.* To ensure that BGT could always seek guidance from the contracting officer himself, the Contract identifies John Stefano as the contracting officer and provides his address and contact information. *Id.*

BGT alleges that, in a series of emails dated January 2015, "Ms. Suzanne Onesti of the Navy" represented that NSWCPD's engine mounts and exhaust collector would not be available to BGT. Compl. at ¶¶ 22, 24, ECF No. 1. In essence, BGT alleges that NSWCPD "refused to provide the contractually specified GFE." *Id.* at ¶ 37. As a result of NSWCPD's alleged withdrawal of authority to use certain GFE, BGT claims to have independently procured engine

3

mounts and an exhaust collector at a total cost of $610,775.  *Id.* at ¶¶ 28-31.  BGT does not, however, allege that the contracting officer, Mr. Stefano, personally issued any orders, directives, or requests concerning BGT's use of GFE.  *See generally* Compl., ECF No. 1.  In fact, BGT does not allege any communications with Mr. Stefano on this subject.  *See id.*

## II.     Procedural Background

BGT submitted a claim for equitable adjustment to the contracting officer on November 1, 2016.  Compl. at ¶ 4, ECF No. 1.  On May 30, 2017, the contracting officer approved an equitable adjustment totaling $44,316.79 for BGT's construction of a water treatment system.  *Id.* at ¶ 6.  The contracting officer denied the remainder of BGT's claim, including its request to recover the cost of procuring engine mounts and an exhaust collector.  *Id.*  On February 2, 2018, BGT filed this action.

## ARGUMENT

## I.     Standard Of Review

In reviewing a motion to dismiss under RCFC 12(b)(6), the Court must accept plaintiff's allegations as true and construe them in the light most favorable to plaintiff.  *K-Tech Telecomm., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013).  But legal conclusions and conclusory statements are "not entitled to the presumption of truth."  *Id.*  "To avoid dismissal for failure to state a claim under RCFC 12(b)(6), a complaint must allege facts plausibly suggesting (not merely consistent with) a showing of entitlement to relief."  *Kam-Almaz v. United States*, 682 F.3d 1364, 1367 (Fed. Cir. 2012).  In other words, "[t]he facts as alleged must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 1367-68 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

## II. Ms. Onesti Did Not Have Authority To Decrease The Amount Of Contractually-Available GFE

It is axiomatic that "[a] Government agent must have actual authority to bind the Government to a contract." *Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1401 (Fed. Cir. 2016), *cert. denied*, 137 S. Ct. 1825 (2017) (citing *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997)). As a result, "[a]nyone entering into an agreement with the Government takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government, and this risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations on their authority." *Trauma Serv. Grp.*, 104 F.3d at 1325 (citing *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947)). This longstanding principle applies with equal force to contract modifications, as only a Government agent with actual authority can modify an existing contract. *See Winter v. Cath-dr/Balti J.V.*, 497 F.3d 1339, 1344 (Fed. Cir. 2007).

When it comes to the list of GFE available to BGT, both the Contract and the FAR make clear that only the contracting officer was authorized to make modifications. The FAR provides, in relevant part, that "[t]he Contracting Officer may by written notice, at any time . . . decrease the amount of Government-furnished property under this contract" or "[w]ithdraw authority to use property." 48 C.F.R. § 52.245-1(d)(3). *See also* Contract at 44, ECF No. 1-1 (incorporating by reference FAR 52.245-1). The Contract provides, in relevant part, that "[t]he Contracting Officer is *the only person authorized* to approve changes in any of the requirements of this contract and notwithstanding provisions contained elsewhere in this contract, the said authority remains solely the Contracting Officer's." Contract at 54, ECF No. 1-1 (emphasis added). The Contract further instructs BGT not to comply with "any order, direction or request of Government personnel unless it is issued in writing and signed by the Contracting Officer," and

5

warns BGT that "any change at the direction of any person other than the Contracting Officer . . . will be considered to have been made without authority and no adjustment will be made in the contract price to cover any increase in charges incurred as a result thereof." *Id.*

The Court has previously relied on this contract language in holding that only contracting officers can bind the Government. In both *Info. Sys. & Networks, Corp. v. United States*, 81 Fed. Cl. 740, 742 (2008), *aff'd*, 356 Fed. App'x 410 (Fed. Cir. 2009) (unpublished), and *Axion Corp. v. United States*, 75 Fed. Cl. 99, 101 (2007), the contracts at issue contained provisions identical to the one found on page 54 of the Contract. *See Info. Sys. & Networks*, 81 Fed. Cl. at 742; *Axion*, 75 Fed. Cl. at 109. In light of this language, the Court held in both cases that Government agents other than the contracting officer did not have authority to bind the Government. *See Info. Sys. & Networks*, 81 Fed. Cl. at 749 (holding that the contracting officer's technical representative and contract specialist did not have authority to constructively change the contract, and their statements did not bind the Government); *Axion*, 75 Fed. Cl. at 117 (holding that the Government's quality assurance representative did not have authority to approve the contractor's testing, and his approval did not bind the Government).

Here, BGT alleges that "Ms. Suzanne Onesti of the Navy" withdrew the engine mounts and exhaust collector from the list of GFE available to BGT. *See* Compl. at ¶¶ 22, 24, ECF No. 1. But BGT does not (and cannot) allege that the sole Government agent authorized to make this decision – the contracting officer, Mr. Stefano – issued any orders or instructions regarding the availability of GFE. *See generally id.* BGT had ample notice that instruction about the availability of GFE had to come from the contracting officer himself. *See* 48 C.F.R. § 52.245-1(d)(3); Contract at 54, ECF No. 1-1. Indeed, the Contract even warned BGT that reliance on Government personnel other than the contracting officer, such as Ms. Onesti, will result in "no

adjustment [to] the contract price to cover any increase in charges incurred." *Id.* BGT's alleged reliance on statements from a Government agent without authority cannot serve as a basis for a claim.

Because Ms. Onesti's alleged statements, even if accepted as true, cannot bind the Government as a matter of law, the GFE engine mounts and exhaust collector remained available to BGT throughout the contract term. BGT cannot recover damages for its unilateral decision to procure other engine mounts and exhaust collector at a total cost of $610,775. Accordingly, the Court should dismiss counts I, II, and III of BGT's complaint.

### III. BGT Has Failed To Timely Assert Its Right To An Equitable Adjustment, To The Government's Detriment

In count I of its complaint, BGT seeks an equitable adjustment totaling $610,775 for costs it incurred due to the Government's alleged withdrawal of engine mounts and exhaust collector from the list of available GFE. *See* Compl. at ¶ 34, ECF No. 1. The regulation governing contractors' use of GFE, FAR 52.245-1, establishes requirements for seeking equitable adjustments. *See* 48 C.F.R. § 52.245-1(i). Specifically, this provision provides that "[e]quitable adjustments under this clause *shall* be made in accordance with the procedures of the Changes clause." *Id.* (emphasis added). The changes clause for FFP contracts (like the one at issue here) appears in FAR 52.243-1, and it states that a contractor "*must* assert its right to an adjustment under this clause within 30 days from the date of receipt of the written order" from the contracting officer. *See* 48 C.F.R. § 52.243-1(c) (emphasis added). *See also* Contract at 44, ECF No. 1-1 (incorporating by reference both FAR 52.245-1 and FAR 52.243-1). In other words, for claims based on the availability of GFE, assertion of the contractor's claim within 30 days is a contractual and regulatory prerequisite to equitable adjustment.

7

BGT alleges that NSWCPD withdrew the engine mounts and exhaust collector from the list of available GFE in January 2015.  *See* Compl. at ¶¶ 22, 24, ECF No. 1.  For the reasons explained above, that alleged withdrawal was made without authority and, as a result, does not bind the Government.  However, even if an authorized Government agent had withdrawn the GFE, BGT would have been required to assert its right to an equitable adjustment within 30 days.  *See* 48 C.F.R. § 52.245-1(i); 48 C.F.R. § 52.243-1(c).  But BGT did not seek equitable adjustment until November 1, 2016 – more than a year and a half after its deadline for doing so.  *See* Compl. at ¶ 4, ECF No. 1.  Under these circumstances, the FAR precludes BGT's equitable adjustment claim.

The 30-day requirement in FAR 52.243-1(c) is not a trivial technicality, but rather an important mechanism to ensure that contractors do not incur unnecessary expenses that would later pass on to the Government.  BGT allegedly received instruction from Ms. Onesti about the availability of GFE in January 2015.  *See* Compl. at ¶¶ 22, 24, ECF No. 1.  But BGT did not procure its own engine mounts and exhaust collector until three months later, in April 2015.  *See id.* at ¶ 28.  Had it sought equitable adjustment within 30 days of Ms. Onesti's alleged emails, as required by the Contract and the FAR, it could have obtained authorized guidance from the contracting officer about the availability of GFE before it allegedly incurred the expense of procuring its own engine mounts and exhaust collector.  The contracting officer could have informed BGT that NSWCPD's engine mounts and exhaust collector remained available, or instructed BGT to procure a less expensive option.  In any event, BGT's failure to assert its equitable adjustment claim within 30 days deprived the contracting officer of an opportunity to opine on this issue before BGT allegedly incurred damages, thus directly prejudicing the Government.

## IV.   The Contract Precludes The Government's Liability For Breach Of Contract

The regulation governing contractors' use of GFE, FAR 52.245-1, also states:

> However, the Government shall not be liable for breach of contract for the following:
>
> (1) Any delay in delivery of Government-furnished property.
>
> (2) Delivery of Government-furnished property in a condition not suitable for its intended use.
>
> (3) An increase, decrease, or substitution of Government-furnished property.
>
> (4) Failure to repair or replace Government property for which the Government is responsible.

48 C.F.R. § 52.245-1(i).  Thus, the Contract precludes the Government's liability for breach of contract for any decrease in the amount of available GFE.  *See* Contract at 44, ECF No. 1-1 (incorporating by reference FAR 52.245-1).

Exculpatory provisions like the one that appears in FAR 52.245-1 can preclude the Government's liability.  Nearly a century ago, in *Wells Brothers Co. v. United States*, 254 U.S. 83 (1920), the Supreme Court upheld a similar provision, holding that the exculpatory language "cannot be treated as meaningless and futile and read out of the contract" and that its "plain meaning" was "fatal" to plaintiff's claim seeking damages for an alleged construction delay.  *Id.* at 86-87.  A few years later, in *Wood v. United States*, 258 U.S. 120 (1922), the Court again upheld a similar exculpatory clause.  *Id.* at 121-22.  These cases remain good law and, as a result, are binding on this Court.[1]

---

[1] In the past, the Court has been reluctant to uphold narrower provisions that merely limit the amount of a contractor's damages.  *See, e.g., C.J. Betters Corp. v. United States*, 25 Cl. Ct. 674, 676-77 (1992); *Ozark Dam Constructors v. United States*, 127 F. Supp. 187, 190-91 (Ct. Cl. 1955); *Blue Lake Forest Products, Inc. v. United States*, 86 Fed. Cl. 366, 378-79 (2009).  But at the same time, the Court has also acknowledged that broader and clearer exculpatory provisions

9

In count II of its complaint, BGT alleges breach of contract due to NSWCPD's alleged failure to provide GFE. *See* Compl. at ¶¶ 37-38, ECF No. 1. The Contract, which incorporates by reference FAR 52.245-1, precludes such a claim against the Government. Accordingly, the Court should dismiss count II of BGT's complaint.

### V. Plaintiff Cannot Avoid The Contract's Express Terms By Invoking The Implied Duty Of Good Faith And Fair Dealing

It is well established that "a party to a contract cannot use an implied duty of good faith and fair dealing to expand another party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." *Agility Pub. Warehousing Co. KSCP v. Mattis*, 852 F.3d 1370, 1384 (Fed. Cir. 2017) (citing *Metcalf Const. Co., Inc. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014)). "[A]n act will not be found to violate the duty (which is implicit in the contract) if such a finding would be at odds with the terms of the original bargain, whether by altering the contract's discernible allocation of risks and benefits or by conflicting with a contract provision." *Metcalf Const.*, 742 F.3d at 991. In other words, parties "cannot rely on the implied covenant of good faith and fair dealing to change the text of their contractual obligations." *Century Exploration New Orleans LLC v. United States*, 745 F.3d 1168, 1179 (Fed. Cir. 2014).

Here, even if the contracting officer had withdrawn authority to use certain GFE, the Contract expressly required BGT to assert its right to additional payment within 30 days. *See*

---

that preclude the Government's liability altogether for certain claims, like the provision at issue here, are fully enforceable. *See Blue Lake Forest Products*, 86 Fed. Cl. at 380 n.21 (discussing *Wells Brothers* and concluding that "[m]ore explicit clauses . . . have been held to bar claims for breach."). *See also George A. Fuller Co. v. United States*, 69 F. Supp. 409, 412 (Ct. Cl. 1947); *Dept. of Nat. Resources and Conserv. of State of Montana v. United States*, 1 Cl. Ct. 727, 734 (1983) ("it is required that where the government intends to exculpate itself from liability for its breach of contract, it must manifest that intent in clear, direct and express language.").

Contract at 44, ECF No. 1-1.  BGT admits that it failed to comply with this prerequisite.  *See* Compl. at ¶ 4, ECF No. 1.  Permitting BGT to recover damages, notwithstanding its failure to comply with an express contract term, would eliminate the 30-day requirement from the Contract.  Recovery under the implied duty of good faith and fair dealing would impermissibly "change the text" of BGT's contractual obligation.  As such, the Court should dismiss count III of BGT's complaint.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss counts I, II, and III of BGT's complaint for failure to state a claim upon which relief can be granted.

Respectfully Submitted,

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ Elizabeth M. Hosford
ELIZABETH M. HOSFORD
Assistant Director

OF COUNSEL:

GARY M. SALADINO
Counsel
Naval Surface Warfare Center
Philadelphia Division

/s/ Borislav Kushnir
BORISLAV KUSHNIR
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 307-5928
Facsimile: (202) 307-0972
Steven.Kushnir@usdoj.gov

April 3, 2018                                             Attorneys for Defendant